IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DR. BRITTANY RAPP<br>41 Patricia Lane<br>Levittown, PA 19057<br><br>　　　　Plaintiff,<br>　　v.<br><br>DUNMORE INTERNATIONAL<br>CORPORATION<br>145 Wharton Rd.<br>Bristol, PA 19007<br><br>　　　　Defendant. | CIVIL ACTION<br><br><br>CASE NO.: |

## CIVIL ACTION COMPLAINT

Dr. Brittany Rapp (hereinafter referred to as "Plaintiff"), by and through her undersigned counsel, hereby avers as follows:

## INTRODUCTION

1. This action has been initiated by Plaintiff against Dunmore International Corporation (hereinafter referred to as "Defendant") for violations of the Americans with Disabilities Act, as amended ("ADA" - 42 USC §§ 12101, *et. seq*.) and the Pennsylvania Human Relations Act ("PHRA"). [1] Plaintiff asserts, *inter alia*, that she experienced unlawful workplace discrimination and retaliation, culminating in her termination from Defendant. As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

---

[1] Plaintiff's claims under the PHRA are referenced herein for notice purposes. She is required to wait 1 full year before initiating a lawsuit from date of dual-filing with the EEOC. Plaintiff must however file her lawsuit in advance of same because of the date of issuance of her federal right-to-sue letter under the ADA. Plaintiff's PHRA claims however will mirror identically her federal claims under the ADA.

**JURISDICTION AND VENUE**

2. This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§1331 and 1343(a)(4) because it arises under laws of the United States and seeks redress for civil rights violations under the ADA. There lies supplemental and/or ancillary jurisdiction over Plaintiff's future state-law claims, as they arise out of the same common nucleus of operative fact(s) as Plaintiff's federal claims asserted herein.

3. This Court may properly maintain personal jurisdiction over Defendant because Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction in order to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in <u>International Shoe Co. v. Washington</u>, 326 U.S. 310 (1945) and its progeny.

4. Pursuant to 28 U.S.C. §1391(b)(1) and (b)(2), venue is properly laid in this district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

5. Plaintiff filed a Charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff has properly exhausted her administrative proceedings before initiating this action by timely filing her Charge with the EEOC, and by filing the instant lawsuit under the ADA within 90 days of receiving a right-to-sue letter from the EEOC.

**PARTIES**

6. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7. Plaintiff is an adult individual, with an address as set forth in the caption.

8. Defendant is a company located at the above-captioned address that produces coated film, metallized film and laminated film substrates for the aircraft, spacecraft, photovoltaic, graphic arts, packaging, insulation, and electronics industries.

9. At all times relevant herein, Defendant acted by and through its agents, servants and/or employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

## FACTUAL BACKGROUND

10. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

11. Plaintiff began working for Defendant on or about May 30, 2023.

12. Throughout Plaintiff's employment with Defendant, she worked as a Laboratory Chemist.

13. At all times relevant herein, Plaintiff was supervised by Dr. Joshua Finch (hereinafter "Finch").

14. Plaintiff also indirectly reported to Ronn Cort – CEO and President of Defendant (hereinafter "Cort").

15. The relevant Human Resources ("HR") personnel involved in this matter are Vice President of HR, Lee Falconieri (hereinafter "Falconieri") and Senior HR Administrator, Susan Burke (hereinafter "Burke").

16. Plaintiff has and continues to suffer from disabilities, including but not limited to Complex Regional Pain Syndrome ("CRPS").

17. Plaintiff's aforesaid disabilities, at times and under certain circumstances, limit her from performing some daily life activities, including but not limited to performing manual tasks, climbing, and lifting (among other daily life activities).

18. Defendant's management and HR department were apprised of Plaintiff's disabilities and the various symptoms related to the same.

19. The first time that Defendant's management was apprised of Plaintiff's disabilities and limitations was on or about June 6, 2024, when she experienced a medical episode at work and was taken by ambulance to the hospital.

20. Following Plaintiff's aforesaid hospitalization, she kept Defendant's HR department apprised of her medical condition and intent to eventually return to the worksite (as she started working remotely as a reasonable accommodation after she was released from the hospital).

21. During one conversation between Burke and Plaintiff on June 10, 2024, Burke asked Plaintiff for the discharge papers from the hospital that itemized Plaintiff's restrictions.

22. Plaintiff notified Burke that the discharge paperwork likely did not provide any restrictions, as she was still going through a lot of testing to obtain additional information about her medical condition.

23. Plaintiff proceeded to notify Burke during their aforesaid conversation:

> I am seeing a neurologist and following up with other tests before my diagnosis can become official, but he was confident that I am dealing with complex regional pain syndrome (CRPS). We can discuss this more at a later time but I wanted to go ahead and let you know, though I ask this remains low key at the moment. Thanks for everything.

24. Without acknowledging anything that Plaintiff had just told her, Burke abruptly responded: "Just need discharge paperwork."

25. Plaintiff thereafter sent the discharge paperwork and inquired if she needed anything else, to which Burke confirmed that she received the paperwork and stated that she did not need anything else from her at that point.

26. On or about June 13, 2024, Burke contacted Plaintiff via text stating that Plaintiff needed to notify her of any work restrictions before physically returning to the office.

27. Notably, Plaintiff was not given any ADA accommodation paperwork to complete at this point, nor was she notified what the note specifically had to say regarding any restrictions that she may have (such as a time frame for those restrictions).

28. Over the next several days, Plaintiff continued to communicate with Burke her attempts to speak with her doctor about her physical return to the worksite and her continuing medical complications.

29. Burke reiterated throughout these aforesaid conversations that Plaintiff could not physically return to the facility unless she presented any restrictions that she had in writing to Defendant.

30. On or about June 20, 2024, Plaintiff's paperwork clearing her to physically return to the worksite with restrictions was sent to Defendant.

31. Because Plaintiff did not hear anything in response to her aforesaid doctor's note, she assumed that the note was sufficient for her to physically return to the worksite, which she attempted to do on June 24, 2024.

32. However, on or about June 24, 2024, Plaintiff was notified that she needed to leave the worksite because her physician had not provided a timeline for her restrictions. However, Plaintiff was never previously notified of this requirement, as she was never given instructions or directions on what her physician's note needed to specifically detail.

33. Plaintiff expressed concern to Falconieri that she had not been fully notified in early June what her return-to-work note had to include and that had she been notified earlier, this issue could have been avoided. Plaintiff further expressed that she was worried and that she did not want her job to be at risk.

34. Over the next few weeks, it appeared that Defendant's HR department and/or management had issues with every doctor's note that Plaintiff provided, and she kept having to return to her physician, requesting that he clarify certain items so that she could fully return to work at the facility.[2]

35. Once Plaintiff was able to physically return to the worksite (after much back and forth between her and Defendant), she expressed to Falconieri that while she was happy to be back at the worksite, she was overwhelmed by how much attention and unsolicited comments she was still getting regarding her condition and that she was not sure how to cope with it.

36. Shortly after making this comment (and after she was already permitted to physically return to the office), Plaintiff was told that she needed to go back to her physician again and have him clarify her restrictions so that she could go into the warehouse.

37. After presenting another doctor's note to Defendant per the aforesaid request, Plaintiff was eventually able to work in the warehouse.

38. Plaintiff's aforesaid restrictions were eventually lifted in their entirety in or about August of 2024.

39. However, in or about late December/early January of 2025, Plaintiff had another medical episode while at home before everyone returned to work in the new year.

---

[2] Plaintiff continued to work remotely from her home during this time.

40. Approximately three (3) days following this episode, Plaintiff visited her physician for an appointment (which had already been scheduled at least a month in advance of the aforementioned medical episode).

41. During her aforesaid doctor's appointment, Plaintiff discussed the episode she had just recently experienced with her physician and after a thorough evaluation, Plaintiff's doctor expressed that he had no concerns with Plaintiff continuing to work and that she had no work-related restrictions. He also ordered further tests to continue his evaluation of her condition.

42. When Plaintiff returned to work in the new year, she was moving a little more slowly and cautiously as a result of her recent medical episode; however, she was still able to perform her job effectively.

43. Plaintiff mentioned to Defendant's management that it was taking a lot of effort for her to be at work and that it felt like she had a stroke. Plaintiff also stated that her doctor was performing tests to rule out certain causes of her recent medical episode.

44. After making the comments about her medical status, Finch sent Plaintiff a Teams message stating that Defendant was requiring Plaintiff to remain working from home until she got a clearance from her doctor.

45. Plaintiff and Finch talked on Teams later that night, wherein Finch informed her that Cort called him that evening insinuating that Plaintiff was not cleared to be at the worksite and that she was not permitted to return to the worksite without medical clearance, citing the negative connotations that come with the word "stroke."

46. Plaintiff explained to Finch that she never said she had a stroke, just that it felt like she did and that her doctor had seen her right after her medical episode, and he did not place any restrictions on her ability to work.

47. Finch responded to Plaintiff that it was "Ronn's call" and that she needed medical clearance before returning to work.

48. Following her call with Finch, Plaintiff contacted Falconieri the next day and asked him to help her understand why she needed to work from home until she received medical clearance to return to the worksite.

49. Falconieri stated that Plaintiff had not been herself, and simply because she mentioned the word stroke, she needed a medical clearance to return to work.

50. Plaintiff informed Falconieri that she had just seen her doctor a few days prior (after her medical episode), notified him what happened over the holiday break and the symptoms she was experiencing.

51. Plaintiff further notified Falconieri that after examining her, her doctor did not think it was necessary to place her on any work-related restrictions.

52. At the end of her discussion with Falconieri, he informed Plaintiff that there was no need for her to stay home and that this was all just a big misunderstanding (as Cort had taken everything Plaintiff said out of context).

53. Shortly after Plaintiff was permitted to return to work (from having been forced out for no legitimate reason – as discussed *supra*), she had at 1:1 meeting with Cort.

54. During her aforesaid 1:1 meeting with Cort, Cort berated Plaintiff and made discriminatory comments about her disabilities.

55. For example, Cort asked Plaintiff: "Do you know why you passed out in June" and whether it was related to her episode in January. Plaintiff responded stating that she did not know whether the two episodes were related.

56. Cort further stated that his hands were tied [with sending Plaintiff home – discussed *supra*] and questioned: "what did you expect me to do when you used the word 'stroke?'"

57. Plaintiff again explained to Cort that she never said she had a stroke and that she was not a doctor, to which he replied: "your words have credibility. . . you know your body."

58. Plaintiff was taken aback and offended by Cort's aforesaid comments and questions.

59. Plaintiff thereafter sent a message to Falconieri asking " . . . for what I experienced in June, is it coming back up now because it occurred at work?"

60. Falconieri responded to Plaintiff's inquiry by stating:

> Although employee safety and reoccurrence are always top of mind, this particular instance stems from the conversations you had with Josh and Ronn, which raised awareness of the issues you were experiencing. Following the incident in June, we received clearance form your doctor indicating you could return to full duty without restrictions. During our discussion last week you mentioned you were still under doctors care and saw them recently. You shared that anything that may impact your ability to perform your job, your doctor would provide a note for us to review and consider potential accommodations.

61. Plaintiff responded to Falconieri that she was inquiring because of what Cort asked her the day prior about why she experienced the episode in June and the possible connection with the episode in January.

62. Cort later asked for a reset meeting with him, Falconieri and Plaintiff, to clear the air and get back on track, which Plaintiff was more than willing to agree to and expressed the same.

63. While Plaintiff was told this meeting would be scheduled, it never was and instead, Cort continued to exhibit hostility towards her.

64. In February of 2025, Plaintiff submitted a request for an accommodation (related to her disabilities) in the form of working from home one day per week (which she was already doing on a consistent basis).

65. Plaintiff was told that she needed her physician to fill out an ADA accommodation form in order to further consider her request.

66. Plaintiff inquired why she needed to complete this paperwork when she was already working from home one day per week (and so were other employees) – thus evidencing that this was more than a reasonable accommodation.

67. Falconieri responded by stating that Defendant did not have a work-from-home policy and that in order to determine whether Defendant could accommodate her request, Plaintiff's physician needed to complete the form.

68. At this point, Plaintiff did not trust Defendant's management or HR department, due to the prior interactions she had with them regarding her previous accommodation requests/medical disclosures.

69. Therefore, Plaintiff chose not to complete the ADA paperwork; however, she did continue to work one day a week from home for the remainder of her employment (as did other employees).

70. While working for Defendant, Plaintiff became part of Defendant's DEI (Diversity Equity and Inclusion) group.

71. During one of Defendant's DEI meetings, wherein Falconieri was present, Plaintiff raised the topic of disability discrimination in the workplace and stated that she had

experienced negative interactions with people regarding her disability and that its diminishing, minimizing, and dismissive.

72. Plaintiff further stated that she would discuss disability discrimination in the next meeting and present on a female attorney who is an advocate for disability rights.

73. The next meeting occurred on or about March 25, 2025, wherein Plaintiff presented on the aforesaid female attorney and disability rights as it related to the employee/employer relationship.

74. Two days after the March 25, 2025 DEI meeting, Plaintiff was terminated from her employment with Defendant.

75. Plaintiff was notified that she was being terminated because of her "personality" and that her needs were "not a fit."

76. Plaintiff was further told that Defendant "tried to provide multiple trainings" and that she "completed personal and professional development classes" but that such measures were "not sufficient" and that the difficult decision was made to part ways with her.

77. The reason offered by Defendant for her termination was completely pretextual as: (1) Plaintiff was never issued any disciplinary action regarding her personality; (2) Plaintiff was not the only employee to attend trainings or personal/professional development classes; (3) Plaintiff was never informed that said trainings or classes were seen as disciplinary in nature, and in fact, Defendant's management emphasized several times that her and other employees were being hand selected for these classes for positive and rewarding reasons

78. Based on the foregoing, Plaintiff believes and avers that Defendant wrongfully terminated her employment in violation of the ADA.

**Count I**
**Violations of the Americans with Disabilities Act, as Amended ("ADA")**
**([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation; [3] Hostile Work Environment)**

79. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

80. Plaintiff was subjected to hostile treatment because of her [1] actual, perceived and/or record of disabilities; and/or [2] protected activity under the ADA (including requesting medical accommodations and objecting to disability discrimination/retaliation).

81. Plaintiff believes and avers that her actual, perceived, and/or record of disabilities was a motivating and/or determinative factor in Defendant's decision to terminate her employment.

82. Plaintiff also believes and avers that she was terminated from her employment with Defendant because she engaged in protected activity under the ADA, including but not limited to requesting reasonable medical accommodations, objecting to disability discrimination/retaliation, and advocating against disability discrimination in the workplace.

83. Plaintiff asserts that Defendant's decisions (discussed *supra*) were made in violation of the ADA for discriminatory/and or retaliatory reasons.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendant is to be prohibited from continuing to maintain its illegal policy, practice or custom of discriminating/retaliating against employees and are to be ordered to promulgate an effective policy against such unlawful acts and to adhere thereto;

B. Defendant is to compensate Plaintiff, reimburse Plaintiff and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to past lost earnings, future lost earnings, salary, pay

increases, bonuses, medical and other benefits, training, promotions, pension, and seniority. Plaintiff should be accorded those benefits illegally withheld from the date she first suffered retaliation/discrimination at the hands of Defendant until the date of verdict;

  C. Plaintiff is to be awarded punitive damages, as permitted by applicable law(s);

  D. Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper and appropriate including for emotional distress;

  E. Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal and state law;

  F. Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal law; and

  G. Plaintiff's claims are to receive a trial by jury to the extent allowed by applicable law. Plaintiff has also endorsed this demand on the caption of this Complaint in accordance with Federal Rule of Civil Procedure 38(b).

          Respectfully submitted,

          **KARPF, KARPF & CERUTTI, P.C.**

       By: _____
          Ari R. Karpf, Esq. (91538)
          8 Interplex Drive, Suite 210
          Feasterville-Trevose, PA 19053
          akarpf@karpf-law.com
          (215) 639-0801

Dated: February 23, 2026

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Dr. Brittany Rapp | : | CIVIL ACTION |
| v. | : | |
| Dunmore International Corporation | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.    ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.    ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.    ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.    ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)    ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.    (x)

| 2/23/2026 | _[signature]_ | Plaintiff |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-639-0801 | 215-639-4970 | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**DESIGNATION FORM**

Place of Accident, Incident, or Transaction: **Defendants place of business**

---

***RELATED CASE IF ANY:*** Case Number:_____ Judge:_____

1. Does this case involve property included in an earlier numbered suit?  Yes ☐
2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit?  Yes ☐
3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit?  Yes ☐
4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual?  Yes ☐
5. Is this case related to an earlier numbered suit even though none of the above categories apply? If yes, attach an explanation.  Yes ☐

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☒ **is not** related to any pending or previously terminated action in this court.

---

**Civil Litigation Categories**

*A. Federal Question Cases:*

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts)
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Wage and Hour Class Action/Collective Action
☐ 6. Patent
☐ 7. Copyright/Trademark
☐ 8. Employment
☐ 9. Labor-Management Relations
☒ 10. Civil Rights
☐ 11. Habeas Corpus
☐ 12. Securities Cases
☐ 13. Social Security Review Cases
☐ 14. Qui Tam Cases
☐ 15. Cases Seeking Systemic Relief  *see certification below*
☐ 16. All Other Federal Question Cases. *(Please specify)*:_____

*B. Diversity Jurisdiction Cases:*

☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury (*Please specify*):_____
☐ 7. Products Liability
☐ 8. All Other Diversity Cases: *(Please specify)*_____

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

---

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☒ Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐ None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
RAPP, DR. BRITTANY

**(b)** County of Residence of First Listed Plaintiff: Bucks
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Ari R. Karpf, Esq.; Karpf, Karpf & Cerutti, P.C., 8 Interplex Drive, Suite 210, Feasterville-Trevose, PA 19053; 215-639-0801; akarpf@karpf-law.com

## DEFENDANTS
DUNMORE INTERNATIONAL CORPORATION

County of Residence of First Listed Defendant: Bucks
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*
- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [X] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| 110 Insurance | PERSONAL INJURY / PERSONAL INJURY | 625 Drug Related Seizure of Property 21 USC 881 | 422 Appeal 28 USC 158 | 375 False Claims Act |
| 120 Marine | 310 Airplane / 365 Personal Injury - Product Liability | 690 Other | 423 Withdrawal 28 USC 157 | 376 Qui Tam (31 USC 3729(a)) |
| 130 Miller Act | 315 Airplane Product Liability / 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | INTELLECTUAL PROPERTY RIGHTS | 400 State Reapportionment |
| 140 Negotiable Instrument | 320 Assault, Libel & Slander | | 820 Copyrights | 410 Antitrust |
| 150 Recovery of Overpayment & Enforcement of Judgment | 330 Federal Employers' Liability / 368 Asbestos Personal Injury Product Liability | | 830 Patent | 430 Banks and Banking |
| 151 Medicare Act | 340 Marine | | 835 Patent - Abbreviated New Drug Application | 450 Commerce |
| 152 Recovery of Defaulted Student Loans (Excludes Veterans) | 345 Marine Product Liability | | 840 Trademark | 460 Deportation |
| 153 Recovery of Overpayment of Veteran's Benefits | 350 Motor Vehicle / PERSONAL PROPERTY / 370 Other Fraud | LABOR | 880 Defend Trade Secrets Act of 2016 | 470 Racketeer Influenced and Corrupt Organizations |
| 160 Stockholders' Suits | 355 Motor Vehicle Product Liability / 371 Truth in Lending | 710 Fair Labor Standards Act | | 480 Consumer Credit (15 USC 1681 or 1692) |
| 190 Other Contract | 360 Other Personal Injury / 380 Other Personal Property Damage | 720 Labor/Management Relations | SOCIAL SECURITY | 485 Telephone Consumer Protection Act |
| 195 Contract Product Liability | 362 Personal Injury - Medical Malpractice / 385 Property Damage Product Liability | 740 Railway Labor Act | 861 HIA (1395ff) | 490 Cable/Sat TV |
| 196 Franchise | | 751 Family and Medical Leave Act | 862 Black Lung (923) | 850 Securities/Commodities/ Exchange |
| REAL PROPERTY | CIVIL RIGHTS / PRISONER PETITIONS | 790 Other Labor Litigation | 863 DIWC/DIWW (405(g)) | 890 Other Statutory Actions |
| 210 Land Condemnation | 440 Other Civil Rights / Habeas Corpus: | 791 Employee Retirement Income Security Act | 864 SSID Title XVI | 891 Agricultural Acts |
| 220 Foreclosure | 441 Voting / 463 Alien Detainee | | 865 RSI (405(g)) | 893 Environmental Matters |
| 230 Rent Lease & Ejectment | 442 Employment / 510 Motions to Vacate Sentence | | FEDERAL TAX SUITS | 895 Freedom of Information Act |
| 240 Torts to Land | 443 Housing/Accommodations / 530 General | | 870 Taxes (U.S. Plaintiff or Defendant) | 896 Arbitration |
| 245 Tort Product Liability | [X] 445 Amer. w/Disabilities - Employment / 535 Death Penalty | IMMIGRATION | 871 IRS—Third Party 26 USC 7609 | 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| 290 All Other Real Property | 446 Amer. w/Disabilities - Other / Other: 540 Mandamus & Other | 462 Naturalization Application | | 950 Constitutionality of State Statutes |
| | 448 Education / 550 Civil Rights | 465 Other Immigration Actions | | |
| | / 555 Prison Condition | | | |
| | / 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*
- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
ADA (42USC12101)
Brief description of cause:
Violations of the ADA and the PHRA.

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.
- DEMAND $ 
- CHECK YES only if demanded in complaint:
- JURY DEMAND: [X] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE: 2/23/2026
SIGNATURE OF ATTORNEY OF RECORD: *[signature]*

**FOR OFFICE USE ONLY**
RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____